1  Mia Farber (SBN 131467)
   *Mia.Farber@jacksonlewis.com*
2  Nicky Jatana (SBN 197682)
   *Nicky.Jatana@jacksonlewis.com*
3  Buck N. Haddix (SBN 295334)
   *Buck.Haddix@jacksonlewis.com*
4  Kishaniah Dhamodaran (SBN 331001)
   *Kishaniah.Dhamo@jacksonlewis.com*
5  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
6  Los Angeles, California 90017-5408
   Telephone:  (213) 689-0404
7  Facsimile:  (213) 689-0430

8  Attorneys for Defendant
   MCKESSON CORPORATION
9

10                    **UNITED STATES DISTRICT COURT**

11                   **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14 | FAUSTINO ADAM PADILLA, on behalf of | **CASE NO.:**
   | himself and all others similarly situated, and the |
15 | general public, | **DEFENDANT MCKESSON**
   | | **CORPORATION'S NOTICE OF REMOVAL**
16 | Plaintiff, | **OF ACTION TO THE UNITED STATES**
   | | **DISTRICT COURT FOR THE NORTHERN**
17 | v. | **DISTRICT OF CALIFORNIA PURSUANT TO**
   | | **28 U.S.C. §§ 1331, 1441, AND 1446 (FEDERAL**
18 | MCKESSON CORPORATION, a Delaware | **QUESTION JURISDICTION) AND 28 U.S.C.**
   | corporation; and DOES 1 through 50, inclusive, | **§§ 1332, 1441, 1446, and 1453 (CAFA)**
19 | Defendants. |
20 | | (Filed concurrently with Civil Case Cover Sheet;
   | | Declarations of Mallory Kiefer and Mia Farber;
21 | | Corporate Disclosure Statement; and Notice of
   | | Interested Parties)

22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

---

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF FAUSTINO ADAM PADILLA, AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant MCKESSON CORPORATION ("Defendant" or "McKesson") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1332(d), 1441, 1446 and 1453, and removes the above-entitled action from the Superior Court of the State of California for the County of San Francisco based on federal question jurisdiction and the Class Action Fairness Act of 2005 ("CAFA"). McKesson submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff FAUSTINO ADAM PADILLA ("Plaintiff") and without conceding Plaintiff has pled claims upon which relief can be granted. This removal is based on the following grounds:

### SERVICE AND PLEADINGS FILED IN STATE COURT

1.      On May 28, 2024, Plaintiff filed an unverified Class Action Complaint against McKesson in the Superior Court of the State of California for the County of San Francisco entitled *FAUSTINO ADAM PADILLA, on behalf of himself and all others similarly situated, and the general public, Plaintiff, v. MCKESSON CORPORATION, a Delaware corporation; and DOES 1-50, inclusive, Defendants*, Case No. CGC-24-615030, which sets forth the following eight (8) causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly wages; (4) failure to indemnify for necessary business expenses; (5) failure to provide accurate written wage statements; (6) failure to timely pay all final wages; (7) unfair competition; and (8) civil penalties pursuant to the Private Attorneys' General Act (the "Complaint"). As stated in paragraph 9 therein, the Complaint is brought as a class action on behalf of Plaintiff and all persons who are or were employed in hourly, non-exempt positions by Defendant, whether directly or indirectly, in the State of California at any time from four years prior to the filing of this Complaint through resolution or trial of the matter.

2.      McKesson first received Plaintiff's Summons, Complaint and Civil Case Cover Sheet when it was served on May 31, 2024. Declaration of Mia Farber ("Farber Decl.") at ¶ 3. True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by McKesson on May 31, 2024 are attached as **Exhibit "A"** to the Farber Declaration.

3.       On July 1, 2024, McKesson filed and served an Answer to the Complaint in San Francisco County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. *Id.* at ¶ 5.  McKesson's fifth affirmative defense to Plaintiff's Complaint is that his claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185(a).   A true and correct copy of McKesson's Answer is attached as **Exhibit "B"** to the Farber Declaration.

4.       As of today, **Exhibits "A" and "B"** to the Farber Declaration constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court. *Id.* at ¶ 6.

## TIMELINESS OF REMOVAL

5.       This Notice of Removal has been filed within thirty (30) days after McKesson was first served with a copy of Plaintiff's Summons and Complaint on May 31, 2024. *Id.* at ¶ 3.  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE IS PROPER

6.       McKesson reserves the right to move for a transfer of venue as the United States District Court for the Eastern District of California is the venue most appropriate and convenient for the parties. For purposes of this removal, McKesson alleges that venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  As stated above, Plaintiff brought this action in the Superior Court in and for the County of San Francisco.  Thus, for removal purposes, McKesson is removing this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a).

///

## REMOVAL IS PROPER BASED ON FEDERAL QUESTION JURISDICTION

7.    Removal is proper here because Plaintiff's Complaint raises questions of federal law under Section 301 of the federal Labor Management Relations Act (the "LMRA"). Section 301 states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

8.    Federal question jurisdiction under LMRA Section 301 arises (1) where the plaintiff asserts a claim based upon a right conferred upon employees by a CBA, or (2) where the resolution of a plaintiff's state-law claims is substantially dependent on the interpretation of a CBA. *Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000); *see also Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1992) ("[I]f a state law claim is completely preempted by a federal statute such as section 301, the state law cause of action necessarily becomes a federal one and can be removed.").

9.    "[A]lthough the language of [LMRA] § 301 is limited to 'suits for violation of contracts,' it has been broadly construed to cover most state-law actions that require interpretation of labor agreements." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1016 (9th Cir. 2000). "When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective-bargaining agreement, that claim must either be treated as a 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

10.    Here, at all relevant times, McKesson was and is an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2). Throughout the Class Period, McKesson's hourly warehouse employees, including Plaintiff, were union members whose employment was and is governed by collective bargaining agreements. Declaration of Mallory Kiefer ("Kiefer Decl.") at ¶ 14, **Exhibits "A" and "B**." At all relevant times, the union that collectively bargained the collective bargaining agreements on behalf of Putative Class Members like Plaintiff was and is a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5). *Id*.

///

1    11.    The collective bargaining agreements expressly provide for (1) the wages, hours of work,

2  and working conditions of employees; (2) meal and rest periods for those employees; (3) final and

3  binding arbitration of disputes and grievances; (4) premium wage rates for all overtime hours worked;

4  and (5) a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

5    12.    Plaintiff was subject to the "Collective Bargaining Agreement Between McKesson

6  Pharmaceutical Corporation and Chauffeurs, Teamsters, and Helpers Local Union No. 150" in effect

7  from April 1, 2016, to December 10, 2020, and December 11, 2020 through the present (the "CBAs").

8  Kiefer Decl. at ¶ 14, **Exhibits A and B**.  True and correct copies of the CBAs are attached to the Kiefer

9  Declaration as **Exhibits A** and **B**.

10    13.    Plaintiff alleges in his Third Cause of Action that McKesson failed to pay Plaintiff and

11  Putative Class Members for all overtime wages and minimum wages.  Farber Decl. at ¶ 3, **Exhibit "A"**

12  ["Complaint"] at ¶¶ 62, 72, 74, 76.

13    14.    Under California Labor Code Section 514, California Labor Code Section 510 (and 511)

14  "do not apply to an employee covered by a valid collective bargaining agreement if the agreement

15  expressly provides [1] for the wages, hours of work, and working conditions of the employees, and [2] if

16  the agreement provides premium wage rates for all overtime hours worked and [3] a regular hourly rate

17  of pay for those employees of not less than 30 percent more than the state minimum wage."  *See* Cal.

18  Lab. Code § 514.

19    15.    The CBAs that governed Plaintiff's employment with McKesson satisfy the first prong as

20  each provides for the "wages, hours of work, and working conditions of the employees."  Kiefer Decl. at

21  ¶ 14, **Exhibits A** and **B** at Article 1, Section 1, p. 3.  Specifically, the CBAs cover "all wages, hours of

22  work and other terms and conditions of employment for all full-time and regular part-time warehouse

23  employees." *Id.*

24    16.    The CBAs also satisfy the second prong as they provide for "premium wage rates for all

25  overtime hours worked." *Id.* at Article 6, Section 5, p. 8.  Specifically, the CBAs provide all such time

26  is paid "at time and a half." *Id.*

27    17.    Finally, the CBAs satisfy the third prong in that they provide for a "regular hourly rate of

28  pay for those employees of not less than 30 percent more than the state minimum wage."  The wage

rates set forth in the CBAs, as applicable to Plaintiff, are and have been well over the California minimum wage. Plaintiff's average hourly rate during the Class Period was $24.67/hour, which is more than 30% higher than the applicable minimum wage rates. Kiefer Decl. at ¶¶ 14-15, **Exhibit A** at Article 23, pp. 27-28, **Exhibit B** at Article 23, pp. 26-27.[1]

18.    Ultimately, by operation of California Labor Code Section 514, Plaintiff does not have any rights under Section 510. Accordingly, Plaintiff's "unpaid overtime" claim arises solely out of, and is limited to, the CBAs. In other words, resolving the merits of Plaintiff's "unpaid overtime" claim is substantially dependent upon, and requires analysis, interpretation, and application of the CBAs.

19.    As such, Plaintiff's Third Cause of Action for failure to pay overtime is preempted by Section 301. *See Allis-Chambers Corp., supra*, 471 U.S. at 220 (holding that state law claim that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" is completely preempted by Section 301 of the LMRA); *Burnside v Kiewitt Pac. Corp.,* 491 F.3d 1053, 1059 (9th Cir. 2007) (stating that where the asserted rights exists solely under a collective bargaining agreement, the claim is preempted by Section 301).

## REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT

20.    Removal of this action is also proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

21.    In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

22.    As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the

---

[1]    *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm) (stating the minimum wage rate for employers with 26 employees or more was $13.00/hour as of January 1, 2020, $14.00/hour as of January 1, 2021, $15.00/hour as of January 1, 2022, and $15.50/hour as of January 1, 2023).

matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant.  *See* 28 U.S.C. §§ 1332(d) and 1453.  Furthermore, McKesson is not a State, State official, or other governmental entity.

## A.    THE PUTATIVE CLASS CONTAINS MORE THAN 100 MEMBERS.

23.    CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).

24.    Here, Plaintiff's Complaint asserts that the Putative Class is "so numerous that the individual joinder of each individual class member is impractical."  Farber Decl. at ¶ 3, **Exhibit "A"** ["Complaint"] at ¶¶ 11.[2]  Further, McKesson's records identify in excess of 787 individuals who have been employed by McKesson as non-exempt employees in the State of California between May 28, 2020 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between May 28, 2020 and the present is referred to herein as the "Putative Class Period").[3]  Kiefer Decl. at ¶¶ 7, 8.[4]  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

## B.    NONE OF THE NAMED DEFENDANTS ARE GOVERNMENT ENTITIES.

25.    McKesson is not a State, a State official, or any other governmental entity.  Kiefer Decl. at ¶ 3.

## C.    MINIMAL DIVERSITY IS SATISFIED UNDER CAFA.

26.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one

---

[2]    McKesson denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.  McKesson also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

[3]    Although the Putative Class Period spans from May 28, 2020 to the present, all calculations used in this Notice of Removal are based on data for 787 Putative Class Members who worked for McKesson in California between May 28, 2020 and December 9, 2024.  *See* Kiefer Decl. ¶¶ 7, 8.

member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

27.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

28.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.,* No. CV 17-02871-BRO (SSx), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

29.    McKesson is informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California. **Exhibit "A"** ["Complaint"] at ¶ 4.

///

30.     For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c).  With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities.  *Id*.  A corporation can only have one "nerve center." *Id*. at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state.  *Id*.

31.     At the time Plaintiff filed the Complaint and presently, McKesson has been a corporation organized under the laws of the State of Delaware.  Kiefer Decl. at ¶ 4.  At all relevant times, McKesson's company headquarters, and thus its principal place of business, has been in the State of Texas.  *Id*. McKesson's headquarters in Irving, Texas is where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, coordinate and control the company's operations and activities.  *Id*. at ¶ 5.  Most of McKesson's executive officers maintain their offices in the State of Texas.  *Id*.  Accordingly, for purposes of removal under CAFA, McKesson is a citizen of the States of Delaware and Texas, and is not a citizen of the State of California.

32.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States Delaware and Texas.[5] 28 U.S.C. § 1332(d)(2).

## D.    THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BASED ON A PLAUSIBLE READING OF THE ALLEGATIONS OF THE COMPLAINT.

33.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. §

---

[5]     The citizenship of the Doe defendants is immaterial for the purpose of determining whether CAFA's minimal diversity requirements are satisfied under CAFA.  *See* 28 U.S.C. § 1441(a); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices").

1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

34.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

35.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum.  *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in

controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").   "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (*citing Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 594-96 (2013)).   "The Supreme Court has held that when a class-action plaintiff stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore that stipulation when assessing the amount in controversy. This is so because although individual plaintiffs are the masters of their complaints and may stipulate to amounts at issue that fall below the federal jurisdictional requirement, the same is not true for a putative class representative, who cannot yet bind the absent class."  *Arias*, 936 F.3d at 928-29 (*citing Standard Fire Insurance Co.*, 568 U.S. at 595-96  (internal quotations and citations omitted)).

36.     In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold."  135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions," which need not be proven.  *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted); *Arias*, 936 F.3d at 922, 925 (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven").   Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'"  *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.  On the contrary, courts are required to interpret CAFA's

1    provisions broadly in favor of removal.  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th

2    Cir. 2015).

3          37.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation

4    rate is 100% unless the plaintiff specifically alleges otherwise.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007

5    U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes

6    no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller

7    than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted

8    to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the

9    putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see*

10   *also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal.

11   Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under

12   CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent

13   violation rate, or assuming that each member of the class will have experienced some type of violation—

14   when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes*

15   *Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation

16   rate in calculating the amount in controversy when the complaint does not allege a more precise

17   calculation.").

18         38.    While Plaintiff does not allege a specific amount in damages, the Complaint was filed as an

19   "unlimited" jurisdiction civil case on behalf of the Putative Class.  As such, Plaintiff is claiming the

20   monetary damages and restitution he is seeking exceeds the $35,000 minimum jurisdiction limits of the

21   California Superior Court,[6] which is confirmed by the fact that he designated his case as "Unlimited

22   (Amount demanded exceeds $35,000)" on the Civil Case Cover Sheet.  Farber Decl. at ¶ 3, **Exhibit "A"**

23   [Civil Case Cover Sheet].  Plaintiff further contends that his claims "are typical of the other class members'

24   claims" and that "Defendants have a policy or practice of failing to comply with the Labor Code and

25   Business and Professions Code as alleged in this Complaint." Complaint at ¶ 13.  Thus, based on the

26   allegations in the Complaint, it is plausible that Plaintiff is seeking at least $35,000 [the unlimited

27   jurisdictional amount] per Putative Class Member, which places over **$27,545,000.00** in controversy

28

---

[6]     *See* California Code of Civil Procedure §§ 86(a) and 88.

($35,000 x 787 Putative Class Members).  Kiefer Decl. at ¶ 8; *see Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

39.    In the alternative, and without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[7] also places an aggregate amount in controversy exceeding $5,000,000, exclusive of attorneys' fees, interest, and costs, as follows:

a.    <u>First Cause of Action – Failure To Provide Meal Periods</u>: Plaintiff alleges that, "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the Meal Period Sub-Class with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period."  Complaint at ¶ 41.  Plaintiff also asserts that, "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of failing to pay premium wages to Meal Period Sub-Class members when they worked five (5) hours without clocking out for any meal period."  Complaint at ¶ 42.  Plaintiff further asserts that, "[a]t all relevant times, Defendants failed to pay Plaintiff and the Meal Period Sub-Class members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided."  Complaint at ¶ 44.  Given these purported violations, Plaintiff claims he and the Putative Class Members are entitled to "an hour of premium wages on each workday that the employee is not provided with the required meal period."  Complaint at ¶ 36.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week per employee for all Putative Class Members, which would place over **$1,213,581.18** in controversy in connection with his meal period claim, using the class time period and each putative class member's hourly pay rate.[8]  Kiefer Decl. at ¶ 10 .

b.    <u>Second Cause of Action – Failure To Provide Rest Periods</u>: Plaintiff alleges that, "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not

---

[7]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

[8]    In the event Plaintiff was able to prove two noncompliant meal periods per week per employee for all Putative Class Members, the damages would total $2,427,162.36, using the class time period and each putative class member's hourly pay rate.  *See* Kiefer Decl. ¶ 10.

providing members of the Rest Period Sub-Class with net rest period [sic] of at least ten minutes for each four-hour work period, or major fraction thereof." Complaint at ¶ 53. Plaintiff further alleges that, "[a]t all relevant times, Defendants failed to pay Plaintiff and the Rest Period Sub-Class members additional premium wages when required rest periods were not provided." Complaint at ¶ 54. Given these purported violations, Plaintiff claims he and the Putative Class Members are entitled to "an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s)." Complaint at ¶ 50. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week per employee for all Putative Class Members, which would place over **$1,213,581.18** in controversy in connection with his rest period claim, using the class time period and each putative class member's hourly pay rate.[9] Kiefer Decl. at ¶ 11.

c.    <u>Third Cause of Action – Failure to Pay Hourly and Overtime Wages</u>: Plaintiff claims that "[a]t all relevant times, Defendants have applied centrally devised policies and practices to him and Hourly Employee Class members with respect to working conditions and compensation arrangements." Complaint at ¶ 70. Plaintiff alleges that, "[d]uring the relevant time period, Defendants failed to pay Plaintiff and Hourly Employee Class members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted, or otherwise encouraged Plaintiff and Hourly Employee Class members to perform off-the-clock work." Complaint at ¶ 72. Plaintiff further alleges that, "Defendants violated the rights of Plaintiff and Hourly Employee Class members under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked . . . by not correctly calculating their regular rate of pay to include all applicable remuneration." Complaint at ¶ 76. Given these purported violations, Plaintiff claims he and Putative Class Members are entitled "to recover unpaid straight time and overtime wages, interest thereon, and costs of suit." Complaint at ¶ 74. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime wages per week per employee for all Putative Class Members, which would place **$1,820,912.10** in controversy in connection with their overtime claim, using the class time period and each putative class

---

[9]    In the event Plaintiff was able to prove two noncompliant rest breaks per week per employee for all Putative Class Members, the damages would total $2,427,162.36, using the class time period and each putative class member's hourly pay rate. *See* Kiefer Decl. ¶ 11.

member's hourly pay rate. [10]   Kiefer Decl. at ¶ 9.   Additionally, Plaintiff claims he and Putative Class Members seek "to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon."  Complaint at ¶ 62.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of minimum wage per week for all Putative Class Members, which would place over **$1,404,858** in controversy in connection with his minimum wage claim ($13.00[11] minimum hourly wage rate x 1 hour per week x 54,033 workweeks plus an equal amount in liquidated damages).  Kiefer Decl. at ¶ 8.

       d.    <u>Fifth Cause of Action – Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions</u>: Plaintiff asserts Defendant derivatively failed to provide Putative Class Members with accurate itemized wage statements for all wages in writing showing: "(1) gross wages earned, (2) total hours worked by the employee. . . (4) all deductions. . . (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."  Complaint at ¶ 92.  Plaintiff further contends "at all relevant times during the applicable limitations period, Defendants have filed to provide Wage Statement Penalties Sub-Class members with written wage statements as described above."  Complaint at ¶ 94.  Given these purported violations, Plaintiff claims he and Putative Class Members are entitled to actual damages "not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member."  Complaint at ¶ 97.  During the one-year statute of limitations period mandated under Labor Code section 226 (i.e., May 28, 2023 to the present), McKesson has issued in excess of 5,166 bi-weekly wage statements to Putative Class Members.  Kiefer Decl. at ¶ 12.  Thus, based on the allegations in the Complaint, it is plausible

---

[10]     In the event Plaintiff is able to prove two hours of unpaid overtime wages per week per employee for all Putative Class Members, the damages would total $3,641,824.20, using the class time period and each putative class member's hourly pay rate.  *See* Kiefer Decl. ¶ 9.

[11]     For purposes of calculating potential minimum wage damages in this Notice of Removal, McKesson conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($13.00 per hour).  *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm).

that Plaintiff has placed over **$539,700** in controversy in connection with his wage statement claim ($50 per first wage statement x 462 Putative Class Members who worked between May 28, 2023 and December 9, 2024, plus $100 per each subsequent wage statement x 5,166 pay periods worked by Putative Class Members between May 28, 2023 and December 9, 2024, up to a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members"); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

      e.    <u>Sixth Cause of Action – Failure to Timely Pay Wages Owed at Separation</u>: Plaintiff derivatively asserts Defendant independently failed to timely pay the earned wages of Putative Class Members upon separation.  Complaint at ¶¶ 104-107.  During the applicable three-year statute of limitations period (May 28, 2021 to present), 284 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant.  Kiefer Decl. at ¶ 13.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$1,539,052.80** in controversy in connection with their claims for waiting time penalties, using each putative class member's daily rate for each day up to thirty days after their separation from employment.[12] *Id.*

      40.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class action, which the Court must consider and include in the amount in controversy. Complaint at ¶¶ 46, 56, 80, 90, 98, 109, 127, Prayer for Relief.  *Solorzano v. Alsco Inc.*, 2021 U.S. Dist.

---

[12]     Plaintiff's sixth cause of action in the Complaint contends "Defendants have failed to timely pay Waiting Time Penalties Sub-Class members all of their final wages in accordance with the Labor Code."  Complaint at ¶ 105.     Based on a plausible reading of the Complaint, Plaintiff is seeking to recover waiting time penalties for any Putative Class Member who was subjected to any of the alleged violations set forth in the Complaint's first through fifth causes of action and separated from their employment with Defendant during the applicable statute of limitations period.

LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).  Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties).  Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas, supra*, 2018 U.S. Dist. LEXIS 78510 at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy"); *Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Solorzano, supra*, 2021 U.S. Dist. LEXIS 129517 at *3-4 (demonstrating courts regularly adopting a $300 per hour rate for attorneys' fees in employment actions).

41.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275 at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729 at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856 at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a

plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975 at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims").

42.     The Court should therefore consider attorneys' fees of at least **$1,932,921.32**, an estimate at 25% of the aggregate amount in controversy calculated in Paragraph 39 above.  *See, e.g.*, *Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672 at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

43.     Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims exclusive of attorneys' fees (**$7,731,685.26**[13]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

44.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Francisco County Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

45.     Based on the foregoing, McKesson hereby removes the above-captioned action from the San Francisco County Superior Court to this Court based on federal question jurisdiction (28 U.S.C. §§ 1331, 1441 and 1446) and CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

///

///

---

[13]     This amount does not include potential damages for Plaintiff's fourth cause of action for failure to indemnify for necessary business expenses pursuant to California Labor Code Section 2802, which would further increase the amount in controversy in connection with Plaintiff's putative class claims.

1    Dated:  July 1, 2024                           JACKSON LEWIS P.C.

2

3                                          By:    */s/ Mia Farber*
                                                   Mia Farber
4                                                  Nicky Jatana
                                                   Buck N. Haddix
5                                                  Kishaniah Dhamodaran

6                                                  Attorneys for Defendant
                                                   MCKESSON CORPORATION
7

8

9

     4863-0093-4860, v. 1
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28